NATIONAL BATTERY CO., RESPONDENT, v. STANDARD ACCIDENT INS. CO., APPELLANT.—41 S. W. (2d) 599.

Kansas City Court of Appeals.   May 4, 1931.

*Mosman, Rogers & Buzard* for respondent.

*Langworthy, Spencer & Terrell* for appellant.

BOYER, C.—Action on employer's liability policy. Plaintiff filed two suits against defendant in each of which recovery was sought for the amount of money and expenses required to be paid by plaintiff in settlement of a damage suit against it by each of two employees. Plaintiff's suits were based upon the neglect and refusal of defendant to assume the defense of said suits, defend same, and pay the amount required under the terms of the policy.

The two suits were consolidated and tried as one action in which each petition was treated as a separate count of the consolidated case. The trial resulted in a verdict and judgment on the first count for $890.80 damages, $89.08, for vexatious refusal to pay, and $150 attorneys' fees; and on the second count for $475 damages, $47.50, for vexatious refusal to pay, and $150 attorneys' fees. The defendant duly appealed.

The petitions filed by plaintiff in the two suits are identical with the exception of the name of the employee who had sued plaintiff. The two employees were named Hymer and Green. The petition in each case among other matters alleges that plaintiff was engaged in the business of manufacturing and selling lead storage and other batteries; that it maintained and operated a manufacturing plant in Kansas City, Missouri, at which place it had various employees; that on June 19, 1925, defendant issued to plaintiff its policy of insurance by the terms of which it agreed to indemnify the plaintiff against loss from liability imposed by law for damages on account of bodily injuries accidently sustained by any employee of the assured while at its factory and by reason of the business of the assured; that defendant agreed to defend on behalf of the assured any suit or suits which might be brought against assured on account of such injuries and to pay all costs. The policy was to be effective for a period of one year. A copy was attached to each petition.

In the petition designated as the first count of the consolidated case it is alleged that one Hymer was in the employ of the plaintiff from December 29, 1925, until February 11, 1926, engaged in the factory of said company, and while in the course of his employment and while the policy of insurance was in effect he suffered and sustained bodily injuries by accidently breathing and inhaling poisonous lead and lead substances on account of which said Hymer instituted suit against plaintiff for damages on October 29, 1927; that plaintiff immediately upon notice of said claim notified the insurance company and transmitted to it notice and summons, and thereafter defendant company undertook to and did appear in the defense of said case and did investigate said case and represented to plaintiff that it would defend said suit and would pay the liability therein; that after defendant, thru its attorneys, had appeared in said cause and after it had been pending for a long period, defendant disclaimed liability

and refused to defend and to comply with the conditions of the policy in respect to defending said suits or indemnifying plaintiff for any loss; that after the refusal of defendant to defend and to assume legal liability plaintiff took up the defense of said action, and that after defendant had been notified many times that the case would be reached for trial and was about to be tried, plaintiff was compelled to and did pay Hymer the sum of $600, to settle and compromise his suit, which was the reasonable value of his claim and which defendant had admitted was a fair and reasonable sum to pay in compromise; that plaintiff was required to pay costs and expenses and attorneys' fees to the amount of $310.80; that the refusal of defendant to defend said action and to meet the liability was vexatious and without reasonable cause and plaintiff demanded the sum of $910.80, the amount expended by it, together with interest, penalty, and attorneys' fees.

Similar allegations were made in the other suit, designated in the consolidated case as the second count, and which was based upon the suit for damages filed against plaintiff by Green, which said suit is alleged to have been compromised by plaintiff for the sum of $200, and costs and expenses amounting to $275.05. Judgment was sought against defendant for $475.05, together with interest, penalty, and attorneys' fees. It was alleged that Green was employed during the months of November and December, 1925, and filed his suit October 29, 1927.

The answer to the consolidated case was a general denial, admitted the issuance of the policy as stated, but further alleged that "the said policy of insurance, among other things, contained the provision that the plaintiff should not voluntarily assume any liability, settle any claims, or incur any expense, except at its own cost, or interfere in any negotiation whether settlement or legal proceeding without the consent of the company previously given in writing." The answer further alleged that after the institution of suits by Hymer and Green that defendant did at the request of plaintiff agree to assume and take charge of the defense of said suits; that thereafter plaintiff, without lawful right or authority so to do, refused to permit defendant to take charge of said suits and ordered defendant to deliver all files and data in connection with said suit to the attorneys for plaintiff which it did; that defendant gave no written consent to plaintiff to assume liability or incur expenses or settle either of said suits, and that by reason thereof plaintiff breached said contract of insurance and released defendant from any and all liability. The reply was a general denial.

Evidence was offered by both parties, at the conclusion of which defendant offered a demurrer to the evidence and requested a di-

rected verdict for defendant. These were denied. Appellant urges two points: (1) The demurrer should have been sustained, and (2) that plaintiff was not entitled to recover penalty and attorneys' fees.

The evidence consisting of admissions, express proof, and permissible inferences favorable to plaintiff shows the following state of facts: The policy of insurance was issued and was in effect as alleged, and while in force plaintiff's employees, Hymer and Green, accidentally sustained lead poisoning in the course of their employment during the latter part of 1925, or the early part of 1926. They were employed but a short period. The employer had no notice of their injuries or of any claim on their part for damages until suits were filed October 29, 1927, when plaintiff's manager received service of summons and petition in each case. The employees each sought recovery of $2999.

On October 31, 1927, plaintiff sent the petitions with summons attached to the adjuster of the insurance company at Kansas City, together with a letter informing the adjuster that this was the first notice that plaintiff had received of the claims and called upon the insurance company to defend the actions. Hearing nothing from the adjuster, plaintiff's manager on November 14, 1927, it being the return day of the suits, wrote the adjuster calling his attention to the cases; that it was the duty of the insurance company to defend, and that he assumed the insurance company had accepted the defense of the cases. The next morning the adjuster telephoned plaintiff's manager that the insurance company disclaimed liability in both cases. Whereupon, plaintiff employed attorneys on its own account to take proper action in the defense of the cases because immediate action was necessary to prevent default judgments. About December 10, 1927, plaintiff received a letter from the adjuster of defendant insurance company notifying plaintiff that the insurance company disclaimed any and all coverage or liability on account of the cases in question and stated that the disclaimer was made because the company had not received timely notice in accordance with the provisions of the policy, and further because the injuries complained of were not covered by the policy. On December 14, 1927, plaintiff acknowledged receipt of the written disclaimer and pointed out that notice had been given as soon as plaintiff was aware of the claims and that the company had construed its policy as covering lead ·poisoning: complained of the disadvantage to which plaintiff had been put by the delayed disclaimer, and insisted upon the duty of the insurance company to defend the cases, and that plaintiff was looking to the insurance company for protection. Thereafter and about January 3, 1928, at the request of the adjuster, plaintiff furnished by letter certain information in reference to

both employees. Prior to that time and before disclaimer there appears to have been no investigation made by the insurance company. Thereafter the adjuster informed the attorney for plaintiff that the insurance company would come in and defend the cases and informed said attorney that he was going to try to settle the cases, and requested that there be no change in the name of attorneys while he was negotiating settlement for the insurance company; that the insurance company would take over the defense of the cases and try to settle. About this time or later the attorneys for the plaintiff received copies of amended petitions with notice to take depositions. They were delivered to the adjuster who arranged with the attorney for the employees to continue the taking of said depositions, and conferred with the attorney of the employees at different times about a settlement of the claims. The adjuster endeavored to settle the cases with said attorney about the month of June and obtained a proposition from him as a basis of settlement of $500 for the Green case and $750 for the Hymer case. The adjuster stated that these figures were reasonable, but no settlement was made by him. Later on and about July 12, 1928, the adjuster wrote a letter to plaintiff's attorneys in which he stated that he had returned the amended petitions which had been furnished him and informed them that the insurance company was still standing upon the disclaimer which it previously served in the case; that the deposition notice which was attached to the petition furnished him was continued once or twice and the depositions had never been taken.

In addition to the Hymer and Green cases, a number of other suits had been instituted against plaintiff, in some of which defendant insurance company assumed liability and in others it disclaimed. Some of the cases in which it disclaimed were placed in the hands of the local attorneys of the insurance company at Kansas City to handle on account of plaintiff. A controversy arose and continued between the plaintiff and the insurance company on account of numerous cases in which the insurance company had disclaimed liability and in which the plaintiff claimed it was the duty of the insurance company to defend. While the Hymer and Green cases were still pending a conference was arranged and held at the home office of plaintiff in St. Paul, in an effort to compose their differences. The meeting was attended by one of the attorneys for plaintiff, an attorney for the insurance company, various officials, and others. No agreement was reached and on the date of the conference, September 12, 1928, plaintiff wrote a letter to defendant calling attention to litigation pending in Missouri and making specific reference to the Hymer and Green cases as well as a number of others. In this letter it is stated:

"We hereby notify you that unless you undertake the defense of these cases not later than September 24, 1928, in accordance with the terms of said policy of liability insurance, we will proceed with the defense of said suits, holding you liable for all damages of every kind that we incur as a consequence of your failure to abide by the terms of your contract with us."

A copy of this letter was sent to the attorneys for the insurance company at Kansas City. The time for reply to plaintiff's letter was extended and on September 25th, the attorneys for the insurance company wrote a letter in each case to plaintiff in which the controversy was reviewed and the positions of the parties stated; reference was made to the letter of September 12th, and that on September 23rd, plaintiff's manager had delivered to said attorneys complete files in the cases of Hymer and Green, and that in view of the insistent urging of plaintiff the insurance company had decided to assume the defense, but the letter thereafter stated as follows:

"This is therefore to advise you, as attorneys for the Standard Accident Insurance Company, that such company will assume the defense of this case, with the reservation of right, however, that if it appears upon future investigation, or at the time of the trial of this cause, that you had actual notice of the injuries received by plaintiff, as alleged in his petition, or have failed to comply with any of the terms or conditions of the contract of insurance with the Standard Accident Insurance Company, that the Standard Accident Insurance Company will not be bound by any expense, costs or judgments that may be incurred or rendered in this case."

Plaintiff then wrote the attorneys for the insurance company that in view of the fact that they refused to handle the cases without reservations they would turn the files in the cases over to plaintiff's attorneys. In reply to this the attorneys for the insurance company stated they were turning over the files as requested and understood that it was the intention of plaintiff to have its attorneys defend the suits, and that the action of plaintiff was in violation of the terms of its contract with the insurance company, on account of which the insurance company would not assume any liability, responsibility, or expense that might be incurred by plaintiff or its attorneys or on account of any judgment that might be obtained.

The cases of Hymer and Green were discussed at the conference of September 12th, and the matter of expenses incurred was considered. The insurance company made no offer at any time to pay expenses incurred by plaintiff in defense of the suits. The cases were ultimately settled by plaintiff's attorneys about November, 1929, when a trial was imminent, by a payment of $200 to Green and $600

to Hymer, together with court costs and other incidental expenses. It was shown that the settlements were reasonable and were advantageous, and that all of the expenses claimed by plaintiff were paid by it and were reasonable in amount and necessarily incurred. It was further shown that at the time of the settlements plaintiff made demand upon defendant's representative to meet the necessary cost of the settlements which was refused.

The evidence on behalf of defendant consisted of the testimony of one of its attorneys at Kansas City, who stated that he had been attorney for the insurance company since 1925; that in 1926 and 1927, and since, there had been a great number of claims and suits filed against plaintiff; that a majority of suits were brought a long period after the injured party had ceased employment, and that while plaintiff claimed that filing of suit was the first notice it had of any injury or claim, it developed in a number of cases that the injured parties claimed they had given notice to plaintiff while still in the employ of plaintiff; that for this reason the insurance company had adopted a policy to disclaim in all instances where it appeared on the face of the petition that poisoning had been contracted long before the filing of suit; that plaintiff insisted the insurance company had no right to disclaim; that numerous conferences were held and correspondence had between representatives of plaintiff and defendant to arrive at a solution of their difficulties and to reach an agreement upon the method of handling cases and to settle disputes which finally culminated in the conference held September 12, 1928, at which time plaintiff refused to recede from its position and insisted that the insurance company defend all suits, including those of Hymer and Green; that thereafter the attorney, upon instruction from the insurance company, advised plaintiff that the company would assume the defense of these cases, but thereafter plaintiff refused to permit the insurance company to defend; and thereafter on demand of plaintiff he turned the files in the cases over to plaintiff's attorneys; and that no demand was ever made upon him by plaintiff to reimburse it for amounts paid in the Hymer and Green cases. There was no evidence of any fact that would tend to show that plaintiff had any knowledge of the injury and claim made by Hymer and Green until they filed their suits, and defendant does not claim there is any such evidence, although it claims to have had such evidence in other cases.

### OPINION.

In support of its contention that the demurrer should have been sustained appellant proposes first that its liability is to be determined solely by its response to plaintiff's demand of September 12, 1928,

and that by this demand plaintiff waived any possible prior breach by the defendant. In the words of appellant:

"It is the defendant's contention that this new demand removes from the case any question of defendant's prior disclaimer, or any question of defendant's prior possible breach of the contract of insurance."

Stated another way, appellant says:

"After the battery company refused to accept this disclaimer and made a new demand upon the insurance company to assume the defense of the cases the liability of the insurance company is dependent upon their response to such demand. Whether or not the insurance company had grounds for the original disclaimer is not an issue in this case."

The brief and argument proceed upon the assumption that everything which transpired between the parties, including disclaimer and assumption of liability and the effect thereof upon the rights of the parties under the contract prior to September 12, 1928, was expunged from the case by plaintiff's letter of that date demanding that the insurance company defend in accordance with the terms of the policy, and by defendant's letter of September 25th, in which it proposed a conditional assumption of the defense of the cases. A fundamental error in appellant's view of the case and its position on this appeal is observed in the fact that the insurance company entirely overlooks and ignores the uncontroverted proof of plaintiff that after the insurance company originally disclaimed, it thereafter voluntarily assumed charge of the cases, promised a defense thereof, recognized and accepted its obligations under the policy, and for some period of time was seeking to discharge its obligations. Appellant treats the case as though nothing had transpired between the insured and the insurance company prior to September 12, 1928, and insists upon its right at that time to assume the defense of the cases conditionally, and that thereafter plaintiff breached the contract by refusing to permit the defendant to take charge of the cases on the conditions proposed by it. We can not agree to the proposals and contentions of appellant and do not find the authorities which are cited to be applicable or in support of the position of the insurance company in this case. On the other hand, we are of opinion and hold that under the facts and circumstances in the case at bar the demurrer was rightly ruled.

The evidence shows that plaintiff complied with the provisions of the policy in reference to notice; that as soon as it obtained any knowledge of the claims of its employees it immediately informed defendant. There is no evidence to the contrary and no reason whatever is shown to justify the position of defendant that plaintiff had failed to give timely notice. After the adjuster was notified of these

claims there was no immediate disclaimer and apparently nothing was done until his attention was again called to the cases at a time when some steps were necessary to prevent default judgments. The adjuster for the company then for the first time orally notified plaintiff that the insurance company disclaimed. On the trial defendant made no showing whatever that it had any reasonable ground upon which to disclaim liability when it did or at any time thereafter. Plaintiff was thus placed at a disadvantage on account of the failure of defendant to give an earlier notice of its disclaimer and was compelled to and did employ attorneys to protect it against the law suits of the employees. Shortly, however, there was a change of position and defendant assumed charge of the cases in this manner: The adjuster for the insurance company called upon plaintiff for information concerning the employees, obtained it, and subsequently thereto and early in the year 1928, in the months of May and June, expressly stated to plaintiff's attorney that the insurance company would then come in, defend the law suits, and attempt settlements; that thereafter the adjuster on repeated occasions did attempt to settle the suits with the attorney for the employees; that he requested plaintiff's attorneys not to change the name of attorneys in the case; and that he received and accepted amended petitions with notice to take depositions, gave his attention thereto, and procured a continuance in the taking of said depositions in his dealings with the attorney for the claimants. The foregoing facts establish beyond question an unqualified assumption and a recognition of liability under the policy on the part of defendant. This showing was made in the presence of the adjuster who sat silently in the courtroom, was not called to the stand, and proof of the foregoing facts was not denied by him or any other witness on behalf of defendant. The conduct of defendant in the trial of this case in failing to call its adjuster as a witness to deny the testimony of plaintiff's witnesses in reference to his assumption on behalf of the insurance company lends added weight to plaintiff's testimony and is practically equivalent to an admission of the truth of plaintiff's evidence. Such conduct gives rise to an inference that the adjuster's testimony would have been unfavorable to defendant. [State ex rel. Wabash Ry. Co. v. Trimble, 260 S. W. 1000, 1004, and cases cited.] It was several months after suits were filed when the adjuster did assume charge of them, and there is no proof that he was not then fully informed of all the facts relative to the cases and in the knowledge of plaintiff. He certainly had ample time for investigation on behalf of his company. In July thereafter he again notified plaintiff that the insurance company was standing on its original disclaimer, apparently without any explanation, reason or excuse

for the changed attitude of himself and his company. There is no evidence of good faith on the part of the insurance company for a disclaimer made by it at any time.

That the insurance company did voluntarily and unconditionally assume defense of the law suits and recognize its obligation so to do under the terms of the policy is conclusively established. This is a paramount factor, ignored by appellant, and is determinative of the case contrary to appellant's contention. So far as this record shows defendant was in possession of all the facts and had all the knowledge which it now has, at the time it assumed liability, and by its conduct then elected its course, waived the question of delayed notice and the alleged breach by plaintiff of the provision of the contract in reference thereto, as well as the question of the liability being within the terms of the policy. Its subsequent disclaimer did not relieve it. [Rieger v. London Guaranty & Accident Co., 202 Mo. App. 184, 211, 215 S. W. 920; Schusterman v. Fidelity Phoenix Fire Ins. Co., 253 S. W. l. c. 95; Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 185, 168 S. W. 438; Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327, 133 S. W. 664; 5 Cooley's Briefs on Insurance (2 Ed.), page 4534.]

Appellant's further reasons in support of its demurrer are that plaintiff refused to permit defendant to take charge of the law suits in accordance with its qualified offer to defend, and that plaintiff thereby violated Clause F of the contract and relieved defendant. Clause F provides in part:

"The assured shall not voluntarily assume any liability, settle any claim or incur any expenses except at its own cost, or interfere in any negotiations for settlement or legal proceeding without the consent of the company previously given in writing."

The foregoing provision was the only affirmative defense set forth in the answer. The evidence shows, as appellant contends, that the plaintiff declined to permit defendant to assume and continue the defense of the cases after September 25, 1928, the date of defendant's letter proposing to make a conditional defense, and that plaintiff thereafter assumed charge of the defense of the suits against it and settled them thru its own attorneys. However, this was not a voluntary assumption of the defense of the cases such as contemplated in the provision, but was more in the nature of a coerced position on the part of plaintiff due to the action of defendant.

Appellant also contends that plaintiff must be denied a recovery under Clause G of the policy which provides that no action shall be brought by plaintiff against defendant until after actual trial of the issues. The clause referred to so provides. A sufficient and complete answer to the foregoing contentions is that defendant, with full knowledge of the facts, recognized its liability under the policy, and

when it thereafter refused to defend except upon its own terms, and to the prejudice of plaintiff, then plaintiff had a right to conduct and control its own defense. It was not required to submit to a judgment against it, but could in good faith make a prudent settlement and call upon defendant for indemnity. Apparently without any reason the insurance company violated its contract with plaintiff to defend the suits and under such circumstances plaintiff did not forfeit its rights under the policy. [Rieger v. London Guaranty & Accident Co., 202 Mo. App. 184, 211, 215 S. W. 920, and cases cited.]

The remaining point made is that plaintiff was not entitled to recover penalty and attorneys' fees because there was no evidence of vexatious refusal to pay, and that no demand for payment was made on defendant. The evidence on the question of demand was conflicting, but that on the part of plaintiff was sufficient to show and authorize a finding that demand was duly made. On the question of vexatious refusal to pay, we deem it unnecessary to review cases wherein divergent results are reached. The result is always based upon the particular facts involved. The case at bar falls well within the rule which authorizes the verdict and judgment rendered. Undenied evidence shows that defendant acted arbitrarily in its disclaimer and in its denial of liability. Its refusal to defend was not based upon any reasonable ground and apparently rests solely on an unfounded suspicion that plaintiff had failed to give timely notice. The only defense pleaded in the case was without merit. In the absence of some reasonable ground for denying liability such a denial must be held to be vexatious. The insurer may not willfully obstruct the rights of the insured, fret and harass him without a rational cause and escape the penalty the statute provides for so doing. Clearly we cannot say as a matter of law that the facts fail to support an inference of vexatious delay. [State ex rel. Ins. Co. v. Trimble, 18 S. W. (2d) 21, 22; Todd v. Security Ins. Co., 221 S. W. 808, 811; Exchange Bank of Novinger v. Turner, 321 Mo. 1104, 1125, 14 S. W. (2d) 425, 433; Stewart v. North American Accident Ins. Co., 33 S. W. (2d) 1005, 1008.] Upon a review of points and authorities suggested we fail to find any reversible error. The judgment should be affirmed. The Commissioner so recommends. *Campbell, C.*, concurs.

PER CURIAM:—The foregoing opinion by BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur, except *Trimble, P. J.*, absent.