## Gross et al. v. Kubel, etc.

*William Charles Brown,* for plaintiff.

*Francis Chapman* and *William Alexander Hamilton,* for garnishee.

GORDON, JR., J., August 24, 1933.—This is an attachment sur judgment, and, by agreement of the parties, the case is before the court for trial by a judge without a jury of the issue of fact raised by the answer of the garnishee. The plaintiff in the execution recovered a judgment for $3,664.40 for injuries sustained by him while he was an occupant of an automobile owned and operated by the defendant, which was involved in an accident on the Lincoln Highway between Philadelphia and Trenton, N. J. Upon the judgment so recovered, the plaintiff issued the attachment execution now before us, and summoned as garnishee Pennsylvania Indemnity Company, which had insured the defendant against liability for negligence in the operation of the car. The garnishee's answer to the interrogatories set up as a defense to the attachment that it is not liable to the defendant, because the policy provides that it should not "cover any liability . . . in respect of injuries caused in whole or in part by any auto-

mobile insured" thereunder "while being operated or manipulated for carrying passengers for hire", and, at the time of the accident, the automobile was being so operated by the defendant. There is no dispute that the policy contains this provision, and the only question of fact raised by the pleadings is whether the automobile was carrying passengers for hire when the accident occurred.

Upon this question, the evidence is to the effect that the plaintiff and defendant were members of the basketball team of the Philadelphia Normal School, which played a regular schedule of games with other teams in various towns and cities surrounding Philadelphia. The team generally went to these games by bus or train, their fares being paid out of a fund collected by voluntary contributions of the members and others, and controlled by a Mr. Allen, who was an instructor of physical education at the school and acted as treasurer and manager of the team. When, however, this form of transportation was not conveniently available, it was customary for the members of the team who had cars to use them for that purpose, and to be paid by Mr. Allen, as compensation for this service, either the equivalent of the train or bus fare or a sum sufficient to reimburse the owner for the cost of the gas and oil consumed, together with a reasonable additional amount for the use of the car. Mr. Allen testified to the arrangement which was made with a car owner for such transportation as follows: "That arrangement was that we were to go, and I was to pay him a certain amount to cover the cost of the trip; and we usually did that in this way; we would say that we could do it by getting the cost of the bus fare or train fare. We did it that way. If we could not do that, he was paid for the cost of gasoline and oil plus something a little more to take care of the use of his car."

In the accident, which happened while the defendant was transporting, under the above arrangement, five members of the team and a Miss Cromley, the latter being a visiting spectator who was not a paying passenger, the plaintiff, Miss Cromley, and others were seriously injured.

Under these facts, which are substantially undisputed, it is clear that the defendant was operating his car in the transportation of passengers for hire when the accident occurred. The arrangement for compensation under which he was carrying his passengers was more than a mere reimbursement for the gas and oil used by all in common on the trip. It went to the additional extent of compensating him for the use of the car. Had he been paid only a sum equivalent to the cost of the gas and oil used, a serious question might have arisen as to whether such a payment constituted a carrying for hire. The additional sum paid to him, however, brings the operation of the car squarely within the clause of the policy quoted above, which it covered against at such a time.

It is not clear from the evidence whether the defendant was ultimately paid for the trip to Trenton. But, even if he was not, the defense raised by the garnishee would still be good, for the car was being operated under the arrangement, and a mere failure or refusal of the passengers to pay would not alter the nature of the transportation from one for hire: Mittet et al. v. Home Insurance Co., 49 S. D. 319, 207 N. W. 49.

These being the facts of the case, they constitute a complete defense to the attachment. The provision of the policy under consideration is reasonable and valid: Rykill v. Franklin Fire Ins. Co., 80 Pa. Superior Ct. 492. By its express terms, the defendant's car was not covered at the time of the accident, and, as the plaintiff's rights against the garnishee can rise no higher than those of the defendant, the verdict must be in favor of the garnishee. It may be that, once liability under an insurance policy is fixed by the events of an accident, some defenses which a garnishee might have against an insured growing out of his subsequent conduct would not be available to it as against a plain-

tiff in an execution. This is especially so where there is collusion between the insurer and the insured to prevent a plaintiff from getting satisfaction of his judgment. Where, however, as here, the defense arises out of the terms of the policy itself and exists prior to and at the moment of the accident, it is always available to the garnishee as a defense to the execution.

This renders unnecessary a decision of one other question raised by the parties; namely, whether the fact that the garnishee withdrew from the case before the trial and refused to defend the suit because of a statement, given to it by the defendant, mistakenly acknowledging that the car was being operated in the transportation of passengers for hire when the accident happened, would relieve the garnishee from liability on the theory of estoppel, if in truth the car had not been so operated. Much might be said in support of this position of the garnishee, for it was induced by the defendant's statement to surrender its vital right to protect its interests by defending the suit, and under such circumstances the defendant would be estopped to deny the correctness of his own representation, on which the garnishee acted in good faith to its detriment. A decision of this question, however, would be so clearly obiter dicta, the transportation having actually been for hire, that we expressly decline to pass upon it. . . .

Accordingly, we make the following

## Order

And now, to wit, August 24, 1933, verdict for Pennsylvania Indemnity Company, the garnishee defendant.

Upon this verdict, judgment may be entered by the garnishee at the expiration of 10 days from this date, unless within that time the plaintiff shall file exceptions to the foregoing findings and conclusions.

### Supplemental opinion sur exceptions

GORDON, JR., J., November 23, 1933.—The opinion of the trial judge in this case adequately expresses our views on the questions raised by exceptions nos. 1, 3, 6, and 9 to 14, which, in our judgment, are without merit and are therefore dismissed. The remaining exceptions, namely, 2, 4, 5, 7, 8, and 15 to 17, relate to a single question which was not clearly pressed at the trial, and the point involved therefore requires discussion at this time. The facts controlling this question are as follows: Immediately after the accident, the defendant notified his insurance company, the defendant garnishee, of the accident, but did not inform it that he was carrying passengers for hire at the time, a fact which rendered the policy issued by the company inoperative. Being thus uninformed of the true status, as passengers for hire, of the occupants of the defendant's automobile, the company's attorney entered his appearance for the defendant and 7 months later sent for him to prepare for trial one of the cases growing out of the accident. The defendant then for the first time informed the company that all but one of the occupants of his car were passengers for hire when the accident happened. The company thereupon immediately notified the defendant that it disclaimed liability under the policy and withdrew from the defense. This occurred 19 months before the first and 26 months before the second and final trial of the case against the defendant.

The plaintiff contends that the company's failure to disclaim liability under the policy for 7 months after it had entered its appearance for the defendant operated as an estoppel or waiver by the company of this defense to its liability. In support of this contention, the plaintiff relies upon the opinion of the Supreme Court in the case of Malley v. American Indemnity Co., 297 Pa. 216. While

some of the language of that opinion would seem to be broad enough to cover the question before us, that case is clearly distinguishable from the case at bar. The general language there used is much wider in its implications than is necessary to rule the question then before the court, and hence in its extended application, is not necessarily binding upon us in deciding the present case. In the Malley case the insurance company did not repudiate liability until after the trial of the suit against the insured, in which the company appeared and actually engaged in the defense of the case; and, in addition, the facts upon which the defense of the company was based were available to it by public records at all times preceding the trial. This, it seems to us, clearly distinguishes the Malley case from the one at bar. Here, knowledge of the fact that the occupants of the plaintiff's automobile were passengers for hire was not available to the insurance company by public records; it was a fact peculiarly within the knowledge of the defendant, which he failed to disclose to the company until he was asked about it: his silence, in this respect, coupled with his reporting of the accident as being covered by the policy, impliedly negatived the existence of such a defense, and thus tended to mislead the company, which acted immediately upon discovering the fact more than a year and a half before the trial, and long before the insured can reasonably be said to have been prejudiced in the preparation of his case for trial 19 months later. In such circumstances an insured is not in a position to claim, upon any theory of waiver or estoppel, that his insurance company has lost a valid defense to his claim, if its delay in disclaiming liability is induced by concealment by the insured, whether intentional or unintentional, of facts within his own knowledge and which he is bound to disclose, provided the company acts promptly upon discovery of such facts. The carrying of passengers for hire, which constitutes the defense here, neither was involved in nor grew out of the circumstances of the accident. Hence, an investigation of the accident and the facts surrounding it would not tend to disclose this independent defense, which the company had under the policy. It is true that the company might have immediately asked the insured whether he had been carrying passengers for hire. To have required it to do this, however, would have required it to act with an unnecessary degree of suspicion against its insured, especially since it was reasonably justified in assuming that the insured would not have reported the accident had it not been covered by the policy he held. The silence of the insured upon the subject lulled the company into a false position. If, therefore, there is any estoppel in the case, it would appear logically to operate against the insured rather than against the company.

The cases cited by the plaintiff from jurisdictions outside of Pennsylvania to support his contention that the company is estopped from setting up the defense under consideration are all distinguishable from the case at bar, and in the light of their facts are in line with the decision in the Malley case. In six of them: Columbian Three Color Co. v. Aetna Life Ins. Co. 183 Ill. App. 384; Globe Navigation Co. Ltd. v. Maryland Casualty Co., 39 Wash. 299; Hoffman v. Professional Underwriters, 259 Mich. 633; Gerka v. The Fidelity & Casualty Co., 251 N. Y. 51; Humes Construction Co. v. Philadelphia Casualty Co., 32 R. I. 246; and Royle Mining Co. v. Fidelity & Casualty Co. of New York, 161 Mo. App. 185, 142 S. W. 438; the companies defended the suit with knowledge of the defense available to them under the policies they had issued. In Cowell v. Employers Indemnity Corp., 326 Mo. 1103, although the company disclaimed liability before trial, it voluntarily went on with the defense of the insured; in National Battery Co. v. Standard Accident Insurance Company, 226 Mo. App. 351, 41 S. W. (2d) 599, it continued in charge of the defense after it

learned that there was grave doubt as to its liability under the policy; in Fairbanks Canning Co. v. London Guaranty and Accident Co., 154 Mo. App. 327, 133 S. W. 664, the company, with knowledge of the defense, did not repudiate liability until the day of the trial; and, in Rieger v. London Guarantee & Accident Co., 202 Mo. App. 184, 215 S. W. 920, the company was held to have waived a defense which grew out of the facts of the accident, and of which it therefore had knowledge.

None of the cases cited by the plaintiff, either from this or from other jurisdictions, holds an insurance company liable under facts similar to those of the case before us; nothing contained in them applies to a case where the assured has concealed from the insurance company the fact that he has violated a condition of the policy, and the insurance company does not know, and is deterred from investigation by the concealment of the assured. In such circumstances, estoppel does not operate to prevent the company from disclaiming immediately upon its learning the facts which justify the disclaimer. See Doolan v. United States Fidelity & Guaranty Company, 161 Atl. 39 (N. H.), which is the closest to this case, on its facts, that has been called to our attention.

The rule to be gathered from the numerous reported decisions upon this subject seems to be that the entry of an appearance for an insured by his insurance company does not of itself constitute a waiver of a defense available to it under the policy it has issued, but that it is entitled to a reasonable time in which to investigate and determine whether it desires to avail itself of any defense that may be found to exist. If its investigation is conducted with reasonable dispatch and its disclaimer is made with promptness upon the discovery of the facts, it does not lose its defense by the mere entry of an appearance. There can be no final rule for determining whether a company has acted reasonably in this respect. This question must be solved by a consideration of the circumstances of each case. The period of time that is reasonable may be longer or shorter in particular cases, depending upon the nature of the defense, the character and difficulty of discovering the facts disclosing it, and the effect which lapse of time may have upon the ability of the insured to protect himself in the event of a disclaimer. If the company has been unreasonable in its delay in disclaiming or, though not tardy in this respect, the disclaimer is made at a time when the interests of the insured would be prejudiced by his being hampered or obstructed in the preparation and presentation of his defense, so that he would be deprived of some valuable right, the doctrine, of waiver operates against the company to estop it from disclaiming; and the essential fairness and reasonableness, in any given set of circumstances, of permitting a company to disclaim is the ultimate test of its right to do so. Applying these principles to the case before us, we are of opinion that the interval of 7 months before the company disclaimed liability under the policy, during which it relied in good faith upon the appearances created by the report of the accident by the insured, was not an unreasonable delay, especially when it is recalled that the company acted a full year and a half before the case came on for trial and immediately upon discovery of the defense available to it. This gave the insured ample time to prepare his own defense to a suit for damages growing out of an accident for which the company never was liable under the express terms of its policy.

For these reasons, we are of opinion that the exceptions now under consideration are without merit. Accordingly, all of the exceptions of the plaintiff are dismissed, and judgment is entered for the garnishee.

NOTE.—In Cromley et al. v. Kubel, etc., C. P. No. 2, Phila. Co., March Term, 1930, No. 2184, a similar case arising out of the same accident, Judge Gordon held the reasoning and decision of the Gross case equally applicable to Miss Cromley, a visiting spectator transported by the defendant, who was not a paying passenger.