259 S.W.2d 91 (1953)
McCARTY
v.
UNITED INS. CO.
No. 21855.
Kansas City Court of Appeals. Missouri.
June 1, 1953.
*92 Richard H. Beeson, David P. Dabbs and Dean F. Arnold, Kansas City, for appellant.
William B. Teasdale, Kansas City, for respondent.
BROADDUS, Judge.
This is an action upon a policy of insurance issued by defendant to plaintiff, Mrs. Elizabeth McCarty. In the court below plaintiff had a verdict and judgment for the claimed indemnity of $62.50 and interest thereon in the sum of $7.70, plus a penalty of $6.25, and an attorney's fee of $200, or a total of $276.45. Defendant appeals.
The policy, styled "Preferred Individual Hospital Expense Policy", insured plaintiff "against financial loss due to hospital residence, hospital expense, surgical and other losses resulting from bodily injury sustained through accidental means * * *." Under the schedule for "Surgical Benefits" the amount payable for the fracture of an arm was $20. Under "Part One" relating to "Hospital Benefits" defendant agreed to pay insured, as a result of any one accident, the following: "(B) Use of operating room, not to exceed $10. (C) Anesthetics administered within a hospital, not exceeding $10. (D) X-Ray Examination, not to exceed $10. (F) Medicines, drugs, dressings, supplies, and any other necessary hospital expense, not to exceed $10. (G) Ambulance service to or from the hospital, not exceeding $5."
Part "Nine" of the "General Provisions" of the policy provides: "Any indemnity under this policy applies only while the insured is necessarily treated and confined as a patient in any hospital upon the advice of, and attended by, a legally qualified physician or surgeon other than himself, except as provided in parts four and five."
Part "Four" referred to in the preceding paragraph is entitled: "Doctor BillsNon-Disabling Injuries" and is as follows: "If the insured suffers any injury sustained directly or exclusively of all other causes through accidental means which is not covered by hospitalization or surgical loss in any of the provisions of this policy but which shall require treatment by a legally qualified physician or surgeon, the Company will reimburse the insured in any amount not exceeding $5 * * *."
Defendant admitted that it issued the policy and that plaintiff on January 6, 1950, suffered an injury through accidental means.
The undisputed facts are that when plaintiff fell in her home in Kansas City she sustained a severe injury to her right arm, to-wit: a comminuted fracture. Both bones in the forearm were "broken and splintered." Plaintiff immediately called her next door neighbor and told her that she had fallen and broken her arm. The neighbor called Dr. Valentine and told him what had happened and he "ordered" that plaintiff be taken to "Research Hospital for X-Rays, and to get there right away." Whereupon the neighbor called a taxicab and plaintiff was rushed to the hospital. Upon reaching there plaintiff was taken to the X-Ray room which was on the fourth floor. An X-Ray was taken of her arm. She was given an anesthetic by a Dr. Peterson. Soon Dr. Valentine arrived and plaintiff was removed to the operating room. The splintered bones were removed and plaintiff's arm was set and placed in a cast. Plaintiff was in the hospital from 3:30 p. m. until 8:00 or 8:30 p. m. While there she *93 was given sedatives and some tablets were placed in a sealed envelope which she took with her when she left the hospital.
It was admitted that plaintiff made due proof of loss. By letter dated February 9, 1950, defendant acknowledged receipt of the same and stated in its letter: "We notice you did not enclose an itemized statement from the hospital showing expenses incurred. In order to properly consider the claim, it will be necessary that you submit this statement for the completion of our file." Plaintiff in response to this request sent defendant an itemized statement for $62.50. On March 2, 1950, defendant wrote plaintiff as follows: "Enclosed is our draft in the sum of $5, which is payable under Part Four of your policy for emergency medical treatment, due to injuries received by you." On March 9 plaintiff wrote to defendant returning the $5 draft and again asserted her claim. By letter dated March 14, 1950, defendant acknowledged receipt of plaintiff's communication of March 9, and stated: "Our investigation indicates it was not necessary for you to be confined within a hospital, therefore benefits under Part One of your policy would not be applicable. * * * Inasmuch as it was not necessary for you to be confined within a hospital as outlined above the Company for this reason, would be unable to accept any further liability other than that specified in our letter of March 2, 1950, namely under Part Four of your policy for emergency medical treatment."
On March 16, 1950, plaintiff again wrote defendant re-asserting her claim. Answering it on March 23, defendant stated that: "There seems to be a misunderstanding as to the meaning of the word `confinement' as used in your above numbered policy. There are two catagories of hospital treatment. The hospitals classify them as `inpatients' and `out-patients'; `in-patients' meaning persons confined and charged room and board; `out-patients', persons treated as emergency cases, such as yours, and not retained long enough to be considered confined and eligible to be charged room and board. Your claim was recognized under Part Four of the Policy. `Doctor Bills Non-Disabling Injuries' which is not covered by hospitalization or surgical loss in any of the provisions of the policy but did require treatment by a physician or surgeon, * * *."
In her petition plaintiff sought to recover for (a) fracture of her arm, the sum of $20; (b) use of operating room $10; (c) anesthetics administered within the hospital $10; (d) X-Ray examination, $10; (e) medicines, drugs, dressings and supplies, $10; (f) ambulance service (taxicab) $2.50; a total of $62.50.
Defendant offered no testimony.
At the conclusion of the evidence the court directed a verdict for plaintiff for the sum of $62.50 and submitted the question of vexatious refusal to pay to the jury.
Defendant's first contention is that the court erred in directing a verdict for plaintiff because: "The clause `necessarily treated and confined as a patient' does not extend policy coverage to a person who is a mere out-patient in a hospital."
That plaintiff's claim fell within Part Nine of the policy there can be no doubt. She went to the hospital "upon the advice of" Dr. Valentine and was there "attended by" Dr. Peterson, who was admitted to be "a legally qualified physician." Plaintiff was "necessarily treated and confined as a patient" in the hospital upon the advice of Dr. Valentine. It was not for defendant to decide as it did that "it was not necessary for you to be confined within a hospital". Where could she have received proper treatment except in a hospital? Nowhere in the policy do the words "in-patient" or "out-patient" appear. Part Four of the policy upon which defendant relies deals with "Non-Disabling Injuries." How can it be contended that the serious injury plaintiff received to her arm would be nondisabling? We rule the point against defendant.
Defendant also contends that "neither the evidence nor the policy terms showed plaintiff entitled to the sum of $62.50, the amount which the court directed the jury to return." The evidence shows that plaintiff actually paid the sum of $88.50. And the facts disclose that defendant at no time disputed the amount of plaintiff's itemized *94 claim. Its sole defense was that it was "not necessary" for her to be confined within a hospital." It is a general rule of law that if an insurance company, with full knowledge of the facts, denies liability for a stated reason, it cannot set up other defenses. There is no real basis for defendant's contention.
Finally defendant says it was error to submit the question of vexatious delay to the jury. In our opinion the facts which we have set out clearly show that defendant took an arbitrary position in maintaining that plaintiff's claim fell within Part Four of the policy. As said by this court in National Battery Co. v. Standard Accident Ins. Co., 226 Mo.App. 351, 41 S.W.2d 599, 605: "The insurer may not willfully obstruct the rights of the insured, fret and harass him without a rational cause, and escape the penalty the statute provides for so doing.
The judgment is affirmed. All concur.