**Lenos G. CANNON and Harry Singleton, a Minor, by Rose Mary Singleton, Guardian Ad Litem, Appellants,**

v.

**The TRAVELERS INDEMNITY COMPANY, a Corporation, Appellee.**

**No. 17141.**

United States Court of Appeals
Eighth Circuit.

March 11, 1963.

Merle L. Silverstein, of Rosenblum & Goldenhersh, St. Louis, Mo., made argument for appellants and filed typewritten brief.

Paul V. Gilbert, St. Louis, Mo., made argument for appellee and filed brief with John F. Evans, St. Louis, Mo.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

The Travelers Indemnity Company, a Connecticut corporation, brought this action for a declaratory judgment against Thomas Harris, Jr., Lenos G. Cannon, Harry Singleton, a minor, and Rose Mary Singleton, asking that a certain automobile liability insurance policy issued by it to Thomas Harris, Jr., be declared void *ab initio* and of no force and effect. From an adverse judgment, Lenos G. Cannon, Harry Singleton and Rose Mary Singleton brought this appeal. Harris did not appeal.

A recitation of the facts in some detail seems to be required. On February 2, 1960, Harris, a 38-year-old Postal employee made an application for a policy of automobile liability insurance. The application was taken on a typewriter with William A. Rogers, an agent for the St. Louis Postal Employees Credit Union, asking the questions and typing in the answers in Harris' presence. The agent testified that he specifically asked Harris about moving traffic violations in the preceding five years and gave speeding or stop-sign convictions as examples of such violations. He also stated that he informed Harris that the premium quoted him would apply only if he had no traffic violations or accidents in the past five years. The amount of the policy premium was substantially affected by an applicant's record of moving traffic violations. According to him, Harris replied that he had had none. Harris, in turn, testified that the agent inquired only of accidents and that no time limit was stated with reference to violations. At the end of the interview, Harris, having been given the most favorable rate, signed the application and made a $10.00 downpayment upon the yearly premium. On February 23rd he paid the balance of the premium.

The application for insurance was submitted to Travelers and on February 10, 1960, it issued a policy effective February 2nd. At the same time, a request for a moral hazard investigation was made to the Retail Credit Association.

On February 16, 1960, Harris was involved in an automobile accident with the appellants and with one other vehicle. Subsequently suits totalling $20,800 were filed against Harris by the appellants.

Somewhere between the 19th and 23rd of February the underwriting superintendent of Travelers learned that the Retail Credit investigation indicated traffic violations by Harris totalling ten points as based on Travelers' system of grading. The point system determined the premium charged. One point was allotted for speeding, three for reckless and careless driving and five points for driving while intoxicated. The underwriting superintendent testified that it was his rule that any application showing three points or more was to be personally referred to him. Included among Harris' alleged violations was one for driving while intoxicated and one for careless driving. The latter two convictions were subsequently fully admitted by Harris to be true. He made no definite statements as to the alleged violations involving speeding. The superintendent testified that to his knowledge his office had never accepted an application with more than a six point grading and had never accepted one which declared a violation involving drinking. He admitted, however, the possibility that such a ten-point application may have been accepted by one of his field underwriters.

During the same period that the underwriter was learning of Harris' driving record, he also was notified of the February 16th accident and resulting claims. He thereupon turned the matter over to the claim department of the company. At that time he advised them that he felt that the policy should be cancelled but did not know what to do about the claim. The underwriter stated that he never did make the ultimate decision to cancel.

After the claim department took over, an adjuster was sent to investigate the accident and claims on or about February 25th. The adjuster testified that all he did in connection with the investigation of the accident itself was to acknowledge appellants' lien letter and obtain a copy of the police report of the accident. He was shortly thereafter directed to stop investigating the accident and to investigate Harris' traffic record. Sometime during the first week in March the adjuster verified Harris' traffic record and reported to his company. A decision to cancel was subsequently made by the claim department on the advice of Travelers' attorney. On April 8, 1960, the adjuster visited Harris at his home and informed him that Travelers was disclaiming liability upon the policy because of fraudulent misrepresentations as to driving convictions made at the time of

the application. He then offered to return the entire premium paid by Harris but the latter refused its tender. There was evidence introduced that the entire premium was sometimes returned after cancellation even when there has been coverage for a short period of time rather than bothering with carrying a small amount of earned premium on the books. The underwriting superintendent testified that he had never before cancelled a policy by declaring such as void *ab initio.*

, At the close of the testimony, the District Judge, sitting without a jury, found that there had been fraud in the procurement of the policy and that the company had not waived and was not estopped from asserting this defense through any subsequent action on the policy or through any delay in denying coverage.

Following the trial court's written opinion, the appellants were granted leave to reopen and newly discovered evidence was introduced by stipulation to the effect that Harris had filed an accident report with the Safety Responsibility Unit of the State of Missouri indicating that Travelers was his liability insurance carrier; that on March 15th, said Unit had forwarded a SR–21 Form to Travelers requesting verification of such coverage; that appellants' attorney on June 21st was informed that Harris had complied with the Safety Responsibility Law; and that the company had never disclaimed the policy with the Safety Responsibility Unit. The trial court found that this additional evidence did not materially change the situation and reaffirmed its earlier opinion.

Appellants' first assignment of error concerns the question of fraud. They contend that Travelers failed to carry the burden of proof as to the following essential elements of fraud: A wilful misrepresentation, materiality, and reliance thereon by Travelers.

The second assignment of error involves an alleged unreasonable delay by Travelers in attempting to void the policy. Such delay, the appellants assert, resulted in a waiver and an estoppel of the defense of fraud. Along with the alleged unreasonable delay, appellants also assert that the trial court erred in not finding an estoppel or waiver through Travelers' failure to inform the Safety Responsibility Unit of the State of Missouri, which failure resulted in denial to the appellants of the protection of the law insofar as no enforcement of its alternative provisions, i. e., posting of cash or a bond by Harris or the suspension of the latter's driving license, was effectuated.

On the question of fraud, it would seem that the record includes substantial credible evidence from which the trial court could, as it did, find that there was wilful misrepresentation by Harris in applying for the insurance. There is, of course, conflict in the testimony, as the agent and Harris were in hopeless disagreement as to what was said. Certainly incentives on the part of Harris existed. He may have made the misrepresentations deliberately, believing that if his traffic violations were disclosed no liability insurance would be issued to him; and, secondly, he was aware that if his traffic violations were known the premium to be charged for the policy for which he was applying would have been very substantially increased. In addition, Harris signed the application denying that he had had any moving traffic violations within the preceding five years. The District Judge also points out that Harris, in his deposition of March 27, 1961, adhered to his position and stated that he had had no moving traffic violations since 1948, while the fact was that he had had at least four such traffic violations within the five-year period preceding the accident. The District Court concluded that Harris was intentionally concealing the violations when he made his application. That finding of wilful misrepresentation is supported by substantial evidence and may not be disturbed here on appeal. United States v. Skolness, 8 Cir., 1960, 279 F.2d 350. As to materiality, the conclusion of

the trial court is likewise amply supported and may not be disturbed.

The only plausible argument here might be on the question of reliance. Neither the court nor the appellee treat that problem directly. The trial court states in his opinion:

"Materiality and reliance on misrepresentation are interrelated. As mentioned before, a misrepresentation is material by the Restatement definition 'where (it) would be likely to affect the conduct of a reasonable man.' Had the company or the underwriter known of the four actual violations totalling ten points, and particularly of the drunken driving charge, no policy would have been issued."

The court cites Minich v. M. F. A. Mutual Ins. Co., Mo.App., 1959, 325 S.W.2d 56, and Gooch v. Motors Ins. Co., Mo.App., 1958, 312 S.W.2d 605. The trial court quotes from Minich, 325 S.W.2d at page 57:

"'A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable * * *.' State Farm Mutual Automobile Insurance Co. v. West, D.C., 149 F.Supp. 289, 305; Gooch v. Motors Insurance Co., Mo.App., 312 S.W.2d 605, 608. This is true whether such misrepresentation be made intentionally or through mistake and in good faith."

The Kansas City Court of Appeals, in rendering that decision, gave no consideration to the question concerning the insurance company's reliance on the applicant's statements.

Gooch also reversed a lower court and in doing so held that a false statement of the applicant's age was material and voided the policy. It held that the statement of age was a warranty. Appellants here claim that the statements as to traffic violations did not constitute a warranty, the mere falsity of which is capable of voiding a policy. In Gooch the question of reliance was again not raised.

In a reply brief, the appellants attempt to limit Minich to its particular facts by the use of Voss v. American Mutual Liability Ins. Co., Mo.App., 1960, 341 S.W.2d 270. In that case, the appellate court affirmed a judgment n. o. v. for the defendant insurer in an action for damages for the alleged wrongful refusal to acknowledge plaintiff as its insured to the Safety Responsibility Unit. The court held that an element of malice was necessary to sustain such an action. Nevertheless, they did find that there was coverage under the policy and the distinction drawn there between Minich and Voss and upon which the appellants rely is predicated upon the fact that the misrepresentations in Voss were made by the agent taking the application and not by the applicant. Certainly, Voss can therefore be of no help to them.

Appellants would treat the question of reliance separately and cite Wood v. Robertson, Mo., 1952, 245 S.W.2d 80, and Meyer v. Brown, Mo.App., 1958, 312 S.W. 2d 158. Both cases lend support to the proposition that when the truth of the statements is readily available to both parties, the alleged defrauded party is not justified in relying upon representations of the other. Wood makes the following statement at page 84 of 245 S.W.2d:

"* * * And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution."

The doctrine is limited by the court in Meyer at page 161 of 312 S.W.2d:

"But those cases do not fit our case and this rule does not apply where

the defects are latent, are not readily discoverable, or are not such as would be encompassed by the doctrine of caveat emptor. We find the following statement in 37 C.J.S. Fraud § 34, pp. 279 and 280: 'However, the mere presence of opportunities for investigation will not of itself preclude the right of reliance; and this is especially true where the circumstances were such that a prudent man would not have been put on inquiry, as where positive statements were made in a manner not calculated to cause inquiry, where the relations between the parties were involuntary, where, although it was possible to ascertain the facts, an investigation would have been difficult, *or where there was intentional fraud*, as where the representations were made for the very purpose of preventing inquiry; * * *

" 'The right to rely on representations is generally conceded where the hearer lacks equal facilities for ascertaining the truth, as where the facts are peculiarly within the knowledge of the speaker and are difficult for the hearer to ascertain, as where misrepresentations relate to latent defects, where, because of the hearer's ignorance and inexperience, it would be necessary for him to employ a third person to make an examination in order to learn the truth, where the employment of an expert would be required, or where from the circumstances attending the transaction, the hearer is compelled to rely on the speaker's statements'.

"Then there is a line of Missouri cases, commencing with Judd v. Walker, 114 Mo.App. 128, 89 S.W. 558 (approved by the Supreme Court, 215 Mo. 312, 114 S.W. 979) holding the doctrine of caveat emptor does not apply when the vendor makes false statements of fact of his own knowledge, the falsity of which is not palpable to the purchaser, and the purchaser relies thereon.

Under such circumstances, the vendor's misrepresentations are not excused. In Kearns v. Sparks, Mo. App., 260 S.W.2d 353, loc. cit. 359, the court quoted with approval the following: ' "The law will not hear the guilty party say, 'You were yourself guilty of negligence', or 'You ought not to have trusted me' " '. See, also, McCaw v. O'Malley, 298 Mo. 401, 249 S.W. 41; Cantley v. Plattner, 228 Mo.App. 411, 67 S.W. 2d 125. *However, the Supreme Court has been careful to point out that each case must be decided upon its own facts.*" (Emphasis supplied.)

■ Despite the authority of Wood as limited by Meyer, it would certainly appear that Travelers here should be granted a reasonable opportunity to conduct an independent investigation and that in the meantime it was fully justified in relying upon Harris' representations. Since the accident in question happened only six days subsequent to the receipt of the application, it could reasonably be said that the company had not sufficient opportunity to conduct its own investigation. Obviously the trial court so concluded. We find no error in the trial court's holdings on the questions of wilful misrepresentation, materiality thereof and reliance thereon by Travelers.

In support of their second assignment of error to the effect that Travelers did not act promptly and within a reasonable time in denying coverage to Harris, there is cited our own case of Milbank Mutual Insurance Company v. Schmidt, 8 Cir., 1962, 304 F.2d 640. That case was, indeed, concerned with the question of unreasonable delay by an insurance company after discovery of an alleged defense of fraud. It is nevertheless, clearly distinguishable by its history in the trial court. The case dealt with the law of North Dakota. This court, in Milbank, did not need to consider the question of whether or not there was fraud in the procurement of the policy because we were satisfied that there was a fact question presented as to whether or not the

company acted within a reasonable time in communicating to the insured their intention to void the policy.

Judge Van Oosterhout said at page 643:

"* * * Schmidt received no notice of rejection of the policy at any time prior to the accident. *What constitutes a reasonable time for action by the insurance company upon the application ordinarily presents a fact issue. We are satisfied that a fact question on the issue of reasonable time is here presented.*" (Emphasis supplied.)

The trial court there left the question of reasonable time for the jury's determination. The jury concluded that there was unreasonable delay. This court continued at page 644:

"Defendant has failed to show that such is not a permissible conclusion upon the basis of North Dakota law. We are satisfied that the court committed no error in submitting the policy liability issue to the jury."

Milbank cannot possibly be taken to stand for the proposition that the delay in this case resulted in a waiver or estoppel as a matter of law.

Cancellation of an insurance policy for any cause whatsoever is always a serious matter, both for the insured and for the insurer. The latter can easily expose itself to a second suit by its own insured if it rashly denies coverage without sufficient belief for so doing. The only equitable rule must be that the insurer be given a reasonable period of time within which to investigate and determine any defense. Any such rule would, of course, require that the question of reasonable time be one of fact in most instances. In the present case it is obvious that the appellee did not completely rely upon the report of the Credit Association for it asked its own agent to conduct an independent investigation. Additionally, during the period of time in which the investigation of Harris' traffic record was being conducted, the report

of his accident came in to the company with the resulting complication it offered and the necessity of interdepartmental handling of the file. The trial judge herein has a background of many years of experience with the law of the State of Missouri and as a United States District Judge. He was sitting as the finder of the facts as well as the judge of the law. He determined that under the facts of this case and under the law of the State of Missouri there was no unreasonable delay resulting in a waiver or estoppel against the insurance company. His determination that the period of 42–48 days in the present case was not an unreasonable delay is not so clearly erroneous as to justify an appellate court in setting it aside. In Milbank, we upheld the right of the jury to determine what was a reasonable time. Here we uphold the right of the trial court sitting as the finder of the facts to make a similar conclusion.

We point out that in analyzing the factual situation, Judge Harper reviewed many cases dealing with Missouri law. The definite impression gleaned from the various decisions is that waiver and estoppel are ordinarily factual questions to be determined on a case-to-case basis. Only when the insurer has commenced the actual defense of the lawsuit have the appellate courts been willing to disturb a lower court's finding in favor of the insurer. No other factual ingredients or particular length of time have given rise to a rule of thumb for determination of such cases. See Hesselberg v. Aetna Life Ins. Co., 8 Cir., 1935, 75 F.2d 490, certiorari denied 296 U.S. 623, 56 S.Ct. 144, 80 L.Ed. 442; Consolidated Elec. Co-op v. Employers Mut. Liability Ins. Co., D.C.E.D.Mo., 1952, 106 F.Supp. 322; Missouri Managerial Corporation v. Pasqualino, Mo.App., 1959, 323 S.W.2d 244; Mistele v. Ogle, Mo., 1956, 293 S.W.2d 330; National Battery Co. v. Standard Acc. Ins. Co., 1931, 226 Mo.App. 351, 41 S.W.2d 599; Cowell v. Employers' Indemnity Corporation, 1930, 326 Mo. 1103, 34 S.W.2d 705; Compton Heights Laundry Co. v. General Acc.,

Fire & Life Assur. Corp., 1917, 195 Mo. App. 313, 190 S.W. 382.

■ Whether the alleged newly discovered evidence presented to Judge Harper following his first opinion and contained in a stipulation of facts submitted by the parties changed the picture is also a question which was determined by the trial court sitting as the finder of the facts and for the same reasons may not be disturbed here.

■ In addition to an insupportable attack on the findings, the appellants, at the very best, have presented only a possibly doubtful question of Missouri law. Unless convinced that the trial court reached an impermissible conclusion thereon, this court will not reverse. See Village of Brooten v. Cudahy Packing Co., 8 Cir., 1961, 291 F.2d 284, 288. Here we are not so convinced.

Affirmed.