Isadore HOLTZMAN and Ben Holtzman, d/b/a Holtzman Metal Company (Plaintiffs), Respondents,

v.

Martin HOLTZMAN (Defendant), Appellant.

No. 29064.

St. Louis Court of Appeals.

Missouri.

April 19, 1955.

**2**

Greensfelder, Hemker & Wiese, Mark R. Gale, St. Louis, for appellant.

Max Sigoloff, St. Louis, for respondents.

HOUSER, Commissioner.

This is an action for money lent. The case originated in a magistrate court, from which it was appealed to the Circuit Court of the City of St. Louis and there tried de novo before a jury. At the close of all the evidence the jury, at the direction of the trial court, returned a verdict for plaintiffs. The court thereupon rendered judgment for plaintiffs and against defendant for the amount of the loan plus interest in an amount aggregating $1,554. Defendant has appealed to this court for a review of the rulings of the circuit court directing a verdict for plaintiffs, and in excluding certain testimony offered by defendant.

The petition of Isadore Holtzman and Ben Holtzman, doing business as Holtzman Metal Company, alleged that on May 29, 1946 they loaned defendant Martin Holtzman the sum of $1,400 which defendant promised to repay to plaintiffs within a reasonable time thereafter, as evidenced by an attached photostatic copy of a check; demand and failure to pay. Defendant did not file any pleading in either the magistrate or the circuit court.

Plaintiffs Isadore and Ben Holtzman are brothers and partners. Defendant Martin Holtzman is a nephew of plaintiffs. Myron Holtzman is a son of Isadore. We will refer to the various members of the Holtzman family by their first names.

Defendant Martin and one Harry Schultz, both veterans, desired to purchase a two-family duplex, one of several built by the same contractor in the year 1946, for the sum of $17,000. There was an acute housing shortage at the time. Contractors were building under priority regulations at that time because of the shortage of materials. Only veterans were qualified to purchase these particular buildings. Under the Servicemen's Readjustment Act, 38 U.S. C.A. § 693 et seq., two veterans could purchase this property jointly by making a down payment of $100 each. Martin and Harry decided to purchase the building, each made a $100 down payment, and both signed the papers. Before closing time Harry Schultz decided not to go ahead with his part of the transaction. Under applicable regulations a $3,000 down payment was required if a non-veteran was substituted for a veteran in completing the deal. Both Martin and Myron, a non-veteran, were working for plaintiffs and both were interested in obtaining housing.

According to plaintiffs' testimony Martin told Myron that if he had another veteran to go in with him the down payment to be made by both veterans would be $100 whereas if Myron, a non-veteran, went in with him they would have to put up $1,500 each or $3,000 as a down payment. Myron decided in favor of the proposition and told Martin that he would be able to "come up"

with his $1,500. Martin did not have $1,500 of his own. He asked Myron if the latter would go to his father, Isadore, to intercede for him and prepare Isadore for the making of a loan to Martin. Myron went to his father, informed him about the proposition, told Isadore that Martin had made a deal with another veteran which had fallen through and that Martin had come to Myron. He asked his father to help Martin. Martin then approached Isadore and told him that he had been contemplating the purchase of the building with another veteran, Harry Schultz, but that he and Schultz had split up; that he was now considering buying the flat with Isadore's son Myron as a partner; that he would have to put up an additional $1,400 as a down payment and asked Isadore if he would make him a loan of $1,400 for that purpose. He stated that he did not have the money at the time because his money was tied up in some surplus government property in which he had an interest. When Isadore asked Martin how he would repay the money Martin told him that he would pay it out of the proceeds of the sale of the surplus property, which was stored on plaintiffs' premises, and that he would be able to do so in two or possibly three months. Isadore told him that he could not make the loan himself but that he would take it up with his brother Ben. Isadore talked to Ben and they agreed to lend the money to Martin for a short period. A check for $1,400 was issued on the firm's checking account, payable to Martin and signed by Isadore. When the check was delivered Martin assured Isadore that he would repay the amount in three or four months. A notation was made on the stub of the firm check book by the bookkeeper that it was a "loan." It was carried as a loan on the partnership books. Myron wrote his own personal check for $1,500. Martin and Myron caused a cashier's check to be issued to the builder for the amount of the two checks and the deal was completed. Prior to the closing of the transaction Martin told an acquaintance named Edward Seuffert that he and Myron were going into the purchase of a house together and that his uncles were going to lend him $1,400 so that he could make his

share of the payment. Six months later Isadore asked Martin for repayment of the $1,400 but Martin "kept putting it off." After numerous demands for payment over a period of years this suit was instituted.

Defendant's evidence positively contradicted plaintiffs' evidence that there was a loan and a promise to repay, as follows:

"Q. Did you at the time you got that check or at any time prior to the time you got the check discuss with Isadore Holtzman borrowing $1400 from him?' A. No, I did not.

"Q. Did you at any time promise to repay the $1400? A. No, I did not.

\* \* \* \* \* \*

"Q. Mr. Holtzman, at the time Mr. Isadore Holtzman handed you the check for $1400 which you are being sued on here today, did you have any conversation with him at that time about the $1400 check being a loan? A. No, I had no conversation with him at all.

"Q. Did you have any conversation with him that you were to pay him the $1400? A. No, I didn't.

"Q. Now, Mr. Holtzman, when was the first time according to the best of your recollection that you found out that Mr. Isadore Holtzman considered the $1400 check a loan? A. About six months after the time we moved into the house."

According to defendant Martin's version of the facts, after Schultz withdrew Martin approached Myron telling him that $3,000 would have to be paid down if he came in on the deal since Myron was not a veteran, whereas if two veterans completed the deal the $3,000 would not have to be advanced. Martin testified that the only thing he was interested in was finding a place to live and in not making an investment because he had no capital. Here was a place in which he could live and which he had found for only $100. He told Myron that he did not have $3,000 to put into it and explained it to him "in that light." Asked if he wanted to

4

"come into the house on that basis" Myron told Martin he would do so and would put up $1,500 of his own and that his father, Isadore, would put up the part that Martin would have to put up in order to enable Martin to buy it as a veteran, and in that way they would raise the amount needed to buy the house. At no time did Martin converse with Isadore about the matter except twice during the month before moving into the building, on which occasions he merely told Isadore that he would soon need the money. At closing time Martin told Isadore that he needed the money for closing the house purchase, and Isadore then issued the check. Nothing was ever said about the giving of a promissory note as an evidence of a loan, or the making of a notation on the check that it was given as a loan. Martin deposited the two checks in his own account. He and his wife signed the mortgage and notes, and he issued a check for the balance of the $3,000 down payment. The deed was made to Martin and his wife. The two couples moved into the apartment where they lived for some time, each paying one-half the monthly payments due on the notes, taxes, etc. Subsequently Martin caused a half interest in the property to be conveyed to Myron. Six months after they moved into the house Isadore, for the first time, indicated to Martin that he regarded the $1,400 check as a loan. At that time Martin denied he owed plaintiffs $1,400 and constantly denied the debt. He testified that Isadore never discussed or demanded the payment of interest and further denied that at any time when called on for payment he promised Isadore to repay the $1,400.

On this appeal defendant Martin takes the position that Isadore and Ben had the burden of proof; that their case, based upon parol evidence, was directly controverted by Martin's testimony; that under the pleadings and evidence there was a sharply contested issue of fact which should have been submitted to the jury; that by the direction of a verdict for plaintiffs defendant Martin has been deprived of his right to have the jury pass on the credibility and weight of plaintiffs' evidence.

This contention must be sustained. The existence of a loan of $1,400 and an express promise to repay was the basis of the cause of action alleged in the petition. While formal pleading by defendant Martin was not required in the magistrate court, Section 517.050 RSMo 1949, V.A.M.S., his appearance, without pleading, operated to raise the general issue. This was true under the old code, Badgett v. Hartford Fire Ins. Co., 238 Mo.App. 797, 188 S.W.2d 761; Ray v. St. Louis, I. M. & S. Ry. Co., 25 Mo. App. 104, and is the law under The Civil Code of Missouri. The issue thus raised by the pleadings was that of "loan or no loan." Plaintiffs had the burden of proving their claim of loan and express promise to repay. They sought to sustain that burden by offering oral testimony. There was a definite and clear-cut conflict between the evidence of plaintiffs and that of defendant on the question of whether the $1,400 check from Isadore to Martin was a loan. Isadore gave direct testimony that the transaction was a loan with a promise to repay, while Martin testified positively that he did not borrow the money from Isadore, promise to repay it, or even discuss loan and repayment. Whether it was or was not a loan to Martin "was a question of fact, under the evidence, to be determined by the jury, necessarily involving the credibility of the witnesses." Massman v. Muehlebach, 231 Mo.App. 72, 95 S.W.2d 808, loc. cit. 812. See Bohle v. Sternfels, Mo., 261 S.W. 2d 936, for the converse of the situation. The trial court had no power peremptorily to direct a verdict in favor of the parties having the burden of proof, Staehlin v. Major, Mo.App., 199 S.W. 427, because defendant was entitled to have the jury pass upon the credibility of plaintiffs' witnesses. The jury had a right to reject and find against plaintiffs' testimony. Troll v. Protected Home Circle, 161 Mo.App. 719, 141 S.W. 916. When the trial court directed a verdict for plaintiffs it in effect told the jury that it must believe the witnesses for plaintiffs and disbelieve the defendant. This it had no right to do. Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S.W. 968, 47 S.W. 907; Wolff v. Campbell, 110

Mo. 114, 19 S.W. 622; Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558. This constituted an invasion of the province of the jury and a denial to defendant of the right of trial by jury. Staehlin v. Major, supra. It would have been error for the court to direct a verdict for plaintiffs (the parties having the burden of proof) even though defendant had introduced no evidence whatever. This is the rule in all cases except where the defendant has admitted the plaintiff's cause of action or by his evidence has established plaintiff's claim. Rogers v. Thompson, Mo., 265 S.W.2d 282. The instant case does not come within that exception. Respondents assume that it does because of the testimony of defendant that he obtained the $1,400 check from plaintiffs, applied it to his own account and used the funds to complete his part of the purchase price. Respondents' assumption is not well founded. Defendant Martin's testimony did not establish plaintiffs' claim or admit their case. The important fact is not that Martin received and used the money. The cause of action pleaded and tried below was not for money had and received, but for money loaned to Martin under an *express* promise to repay. This is inconsistent with a cause of action for money had and received, which rests upon an *implied* promise which the law raises when one person has money in his possession which in equity and good conscience belongs to another. Eichenberg v. Magidson's Estate, Mo.App., 170 S.W.2d 105. Having been tried below as an action for money lent we must so regard it on this appeal. Eichenberg v. Magidson's Estate, supra. The important and significant factor upon which this suit for money lent turns is the nature and character of the transaction, i. e., whether Martin received the money in the capacity of a borrower, with a promise to repay. Defendant has vigorously denied from beginning to end that the money was loaned to him or that he promised to repay it, and he testified to facts from which the jury could find that the transaction was an arrangement for the benefit of a third party. It was reversible error to direct a verdict for plaintiffs in the face of defendant's testimony.

■■■ In their effort to sustain the ruling below respondents urge that Martin's claim and defense that the $1,400 was paid by Isadore in consideration of Martin's exercising his rights under the Servicemen's Readjustment Act for the benefit of Myron is not a valid claim, is unenforceable, and constitutes no defense at all; that this act on the part of Martin did not constitute consideration for the payment of the $1,400. Apparently it is respondents' position that in order for the proof with respect thereto to be defensive there must have been a valid, enforceable contract as between Isadore and Martin, fully supported by a good and valuable legal consideration. We do not so regard it. The defense in this case was a general denial. In support of that defense Martin testified positively that there was no loan, denying that he sought or obtained the $1,400 as a loan or that he had promised to repay the sum. As we have seen that testimony alone raised a fact question which should have been submitted to the jury. With that Martin could have stopped. He went further, however, in an effort to explain the circumstances under which the $1,400 was advanced. His version of the transaction was that the $1,400 was paid by Isadore in consideration of Martin's exercising his rights under the servicemen's act in such a way that Myron became a joint owner of the property, Myron thereby acquiring something which he would not otherwise have been able to obtain. This evidence was explanatory of the nature and character of the transaction from Martin's viewpoint, and corroborative of Martin's claim that the transaction was not a loan to Martin. It was unnecessary, in order to go to the jury on his defense of "no loan," that Martin set up and prove a legal, valid, binding contract supported by a good and valuable consideration as between Isadore and Martin. It was permissible in support of this defense for Martin to introduce evidence shedding light on the character of the transaction and tending to show that the $1,400 was advanced by Isadore for the benefit of his son. Whether Martin's promise was enforceable or constituted a good and valuable consideration under the principles of contract law is immaterial.

Defendant Martin also makes the related point that the trial court erred in excluding testimony concerning the worth and money value of a veteran's right to buy this real estate in 1946 under the servicemen's act. The court sustained objections to the question on the ground that the money value of the right was immaterial. We notice this point in order to clarify the situation in the event the cause is retried and the question of the admissibility of this testimony is again raised.

The evidence showed that in 1946, following World War II, there was a shortage of building materials in the St. Louis area; that they were allotted to contractors on a priority basis, and that there was an acute housing shortage. Government regulations prohibited non-veterans from purchasing certain available buildings except in conjunction with veterans. Myron, a non-veteran, desired to acquire an interest in a particular piece of property which Martin, a veteran, was eligible to purchase. Whether Martin's right to purchase that real estate under the terms of the servicemen's act was a thing of value and if so what its value may have been, would be competent, relevant and material in support of Martin's claim that Isadore parted with the $1,400 not as a loan to Martin but for the purpose of inducing Martin to exercise his rights in a manner which would redound to the benefit of Isadore's son Myron, whereby the latter would be enabled to acquire satisfactory housing accommodations otherwise not obtainable by him.

Respondents, pointing out that Martin was already under contract to purchase the property, cite cases holding that a promise to do or the doing of that which a person is under a previous legal obligation to do is without consideration and unenforceable. But this is neither a suit to enforce nor to recover damages for breach of Martin's promise to include Myron in the purchase of the property in question. The questioned evidence was offered solely in connection with Martin's defense against the charge of loan and promise to repay, in which he denied the existence of a loan and

undertook to show, as an explanation for the advancement of the $1,400, that by enabling Myron and Martin to consummate the purchase of the property Isadore was conferring a benefit, a thing of value, upon his son. With the plausibility or credibility of this explanation we are not concerned here, that being a question for the jury to determine. We are of the opinion, however, that the court erred in excluding the testimony in question.

For these reasons the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

ANDERSON, P. J., RUDDY, J., and NOAH WEINSTEIN, Special Judge, concur.