STATE of Missouri, at the Relation and to the Use of HICKORY COUNTY, Missouri, et al., Plaintiffs-Respondents,

v.

Alva L. DAVIS et al., Defendants-Appellants.

No. 45804.

Supreme Court of Missouri, Division No. 1.

May 13, 1957.

Rehearing Denied June 10, 1957.

George .H. Miller, Sedalia, F. M. Brady, Warsaw, C. P. Junge, Cole Camp, for appellants.

Poague, Poague & Brock, Haysler A. Poague, Barkley M. Brock, Clinton, Ralph Nevins, Hermitage, for respondents.

VAN OSDOL, Commissioner.

This is an action on the official bond of Alva L. Davis, formerly treasurer of Hickory County. The action was brought in the name of the State of Missouri, at the relation and to the use of Hickory County, and certain school districts in that county. It was alleged that Davis as treasurer had given an official bond to the county for the faithful performance of his duties in the office and for the disbursement, according to law, of all moneys coming into his hands as county treasurer; and that he had breached the bond by failing to account for funds coming into his hands to the use of the school districts of the county. Recovery was originally sought in the amount of $9,226.56. The cause having been submitted, a jury returned a verdict for defendants; but the trial court, on motion, set aside the verdict for defendants and entered judgment in favor of relator-plaintiff and against defendants in the sum of $6,631.64. The trial court did not rule relator-plaintiff's alternative motion for a new trial. Defendants appealed from the judgment to the Kansas City .Court of Appeals. Inasmuch as Hickory County, the relator, is a proper party of record and a party of interest, the Kansas City Court of Appeals correctly transferred the cause to this court for review. §§ 522.020 and 522.080, RSMo 1949, V.A.M.S.; State of Missouri, at the Relation and to the Use of Hickory County, Missouri, v. Davis, Mo.App., 292 S.W.2d 322; Art. V, § 3, Const., V.A.M.S.

There was evidence introduced tending to show that Alva L. Davis was last elected to the office of treasurer of Hickory County at the general election in 1950, and his tenure during the term for which he was (last) elected, beginning January 1, 1951, was interrupted by his resignation August 24, 1951. Davis had been treasurer of Hickory County for two preceding terms. Defendants-sureties were signatories to the treasurer's bond for the term beginning January 1, 1951, which bond is involved in this action. The faithful performance by treasurer Davis of his official duties in former terms in office was assured by other bonds with signatories constituting some but not all of those signatory to the bond involved in the instant action.

After the resignation of treasurer Davis, the State Auditor made a special examination of the records, books and papers of the treasurer's office reflecting the treasurer's transactions during the period from July 1, 1948, to August 24, 1951. The auditor's report indicated there was a "book" balance due the school districts of Hickory County in the sum of $39,323.51 as of January 1, 1951. This book balance was computed by beginning July 1, 1948, and bringing "the figures up step by step to January 1st, 1951." According to the report, there was a book balance of $7,143.-39 at the time of the resignation of treasurer Davis, August 24, 1951. This amount, $7,143.39, and the further sum of $2,083.17, which the auditor's report indicated was an overpayment to the Hermitage School District, equaled $9,226.56, the amount for which recovery originally was sought by the prayer of relator's petition.

The evidence introduced tending to support these figures consisted of entries in the line (pertaining to school districts'

funds) of the auditor's "Schedule of Treasurer's Receipts, Disbursements and Book Balances" for the period January 1, 1951, to August 24, 1951, and of statements contained in the auditor's report setting forth the book balances of various school districts as of August 24, 1951, which statement indicated an overpayment to the Hermitage School District in the amount of $2,083.17. Other entries in the auditor's report, upon relator's objection, were excluded when offered by defendants.

In endeavoring to make out a case, however, relator County, hereinafter referred to as "plaintiff," introduced further evidence tending to show a cash balance on deposit in the treasurer's account with the Bank of Hermitage, official depository of Hickory County, as of January 1, 1951, in the amount of $36,493.89; and there was evidence that the cash balance on deposit August 24, 1951, as reconciled with the circumstance of an outstanding check, was $401.33. The $36,493.89 cash balance in the Bank of Hermitage constituted the entire amount on deposit, and represented moneys of all of the funds of the county, including school funds, in the hands of Davis as treasurer of the county as of January 1, 1951. The funds of the county, including school funds, had been intermingled in such a way as to make it impossible to ascertain what portion of the $36,493.89 could be allocated to any one fund.

As stated, plaintiff had introduced entries of the auditor's report tending to show receipts and disbursements to the use of the school districts after January 1, 1951. The entries indicated treasurer Davis had received to the use of the school districts the amount of $108,617.20, and that he had disbursed to the use of the school districts $140,797.32, during the period January 1, 1951, to August 24, 1951. Testimony of the cashier of the Bank of Hermitage, in reading from the records of the bank, indicated, as stated, the cash balance in the treasurer's account, August 24, 1951, (as the balance was reconciled with reference to an outstanding check) was $401.33. Now,

giving credence and conclusive probative effect to stated evidence introduced by plaintiff, it may be seen that taking into account $36,493.89, actual cash on deposit in the treasurer's bank account on January 1, 1951, and applying that amount as if it constituted funds of the school districts, and adding the amount of $108,617.20 (shown in the auditor's report as received after January 1, 1951, to the use of the school districts), and deducting the amount of the balance $401.33 remaining in the treasurer's bank account on August 24, 1951, and deducting the amount of $140,-797.32, shown in the report as disbursements after January 1, 1951, to the use of the school districts, there would remain the sum of $3,912.44 due plaintiff to the use of the school districts of Hickory County as of August 24, 1951.

In the trial court's judgment for plaintiff for $6,631.64, the amount $3,912.44 was included, and this amount and the additional item of $2,083.17, stated in the auditor's report to have been overpaid to the Hermitage School District, constituted the two principal items. The total of these two items, $5,995.61, and interest on the total from August 24, 1951, to the date of the rendition of the judgment for plaintiff in the amount of $636.03, made up the amount of the judgment rendered for plaintiff, $6,631.64.

Defendants-appellants contend the trial court erred in setting aside the jury's verdict and the ensuing judgment for defendants, and in rendering judgment for plaintiff. Defendants-appellants urge that any defalcation in the treasurer's office occurred prior to January 1, 1951, and that the evidence presented as to the time of the alleged defalcations and as to the amounts thereof was not conclusive. It is said these issues of fact were for the jury. Plaintiff-respondent County, on the other hand, contends there were no issues of fact for the determination of a jury. Plaintiff says that of the facts and figures, which plaintiff's evidence tended to show and which we have stated supra, none were disputed

in any way, and there was no issue of fact for the jury. It is argued that treasurer Davis had $36,493.89 cash on hand when he began to serve the term beginning January 1, 1951, and that he and his bondsmen arc estopped to deny that this was school money.

■ Generally, it is the rule that where an officer succeeds himself in office and qualifies therefor by giving a new bond, the sureties on each bond may be held liable only for defalcations occurring during that term of office for which their bond was given. Draffen v. Boonville, 8 Mo. 395; State, to Use of Lancaster v. Jones, 89 Mo. 470, 1 S.W. 355; State ex rel. Douglas County v. Alsup, 91 Mo. 172, 4 S.W. 31; 67 C.J.S. Officers § 163, p. 467.

Without deciding, but for the moment assuming, the validity of plaintiff County's theory of applying the cash balance of $36,-493.89 of January 1st to the treasurer's obligation to the school districts, and assuming the correctness of the computations (considering the cash balance of $401.33 of August 24th and the entries comprising the receipts, disbursements and school fund figures indicated in the portions of the auditor's report introduced into evidence by plaintiff) in tending to show there remained $3,912.44 due the school districts as of August 24th and in tending to show there was an overpayment to the Hermitage School District of $2,083.17, nevertheless, the trial court's order setting aside the jury's verdict and judgment for defendants and entering judgment for plaintiff in the aggregate of these amounts (or in any amount) plus interest, was erroneous.

■ In the trial of this case, an action at law, the parties were availing themselves of their right to the trial of the issues of fact by a jury. In this case, the issues of fact were not submitted to the trial court as the trier of the fact. There is no apparent basis in this case for any exception to the rule which may be stated in this way—"Where a party asserts the affirma-

tive of a proposition and proof of it is necessary to sustain his point, the truth and weight of his evidence, though uncontradicted, is for the jury." State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462, 465. See now, and contrast and compare, Cluck v. Abe, 328 Mo. 81, 40 S.W. 2d 558; Coleman v. Jackson County, 349 Mo. 255, 160 S.W.2d 691; Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570; Rogers v. Thompson, 364 Mo. 605, 265 S. W.2d 282; Holtzman v. Holtzman, Mo. App., 278 S.W.2d 1; Young v. Hall, Mo. App., 280 S.W.2d 679.

In the case of United Farm Agency v. Howald, Mo.App., 263 S.W.2d 889, cited by plaintiff-respondent, defendants admitted by answer their execution of the contract with plaintiff-broker in which plaintiff-broker's commission was stipulated. Plaintiff's evidence tended to show plaintiff was the "procuring cause" of the sale of the farm. Defendants' evidence did not materially vary from that of plaintiff with respect to the fact of procuring cause, indeed, Mr. Howald, a defendant, testified he first met the purchasers when they were brought by plaintiff-broker to look at the farm. Clearly, there was no dispute as to the facts which established that plaintiff-broker had procured the purchasers. Here, it is interesting to notice that plaintiff-broker's evidence as to its procurance of the purchasers, taken alone, only made out a case for plaintiff on the essential factual issue of procuring cause; but the admission in defendants' answer of their execution of the contract with plaintiff-broker, and their evidence that plaintiff-broker had first introduced the purchasers to defendants established the essential factual elements of plaintiff's claim.

■ In the case at bar, it may be assumed the auditor (and his staff) was expert, and learned in the scientific principles of accounting. However, the auditor's report and the auditor's verbal testimony respecting the report were no more than a report and testimony in summary and in

narration of the auditor's inspection and analyses of the records, books, accounts and vouchers of the treasurer's office. These records, books, accounts and vouchers were not introduced into evidence, nor was there any documentary evidence introduced which, as a matter of law, might be interpreted as conclusive, or binding on defendants by way of admissions of defalcations in the amounts or in any amount for which the trial court rendered or could have rendered judgment for plaintiff in this case. Defendants, by answer, had raised the general issue. Plaintiff had the burden of proving its case as alleged. Plaintiff had the risk of (jury) nonpersuasion. Defendants did not admit plaintiff's claim, and their evidence did not establish plaintiff's claim.

■ Assuming the voluminous records, books and other papers which the auditor had examined in making up the report were available to defendants for their examination and for their use in cross-examination of plaintiff's witnesses during the trial, it would seem the report was admissible and was evidence for the jury's consideration and appraisal as to its verity and value in tending to show the facts and figures, pertinent to the issues, which it purportedly reported. Masonic Mut. Benefit Soc. v. Lackland, 97 Mo. 137, 10 S.W. 895; State v. Findley, 101 Mo. 217, 14 S. W. 185; State v. Matkins, 326 Mo. 1072, 34 S.W.2d 1; State ex rel. Sullivan County v. Maryland Casualty Co., 334 Mo. 259, 66 S.W.2d 537; Benz v. Powell, 338 Mo. 1032, 93 S.W.2d 877; and other cases in the Annotation, 66 A.L.R. 1206, at pages 1214–1218. See also Dawes v. Starrett, 336 Mo. 897, 82 S.W.2d 43.

Otherwise stated—assuming, without deciding, that the evidence of cash balances in the Bank of Hermitage and the excerpts of the auditor's report, and the auditor's testimony pertaining thereto, introduced into evidence by plaintiff were sufficient and substantial in tending to show defendants' liability in the total amount for which judgment was rendered by the trial court, this evidence was not conclusive. At best, and on the same assumption, such evidence made out a submissible case; but the verity and the value of such evidence in tending to establish the underlying and ultimate issues of defendants' liability were for the trier of the fact—in this case—the jury. The jury had resolved the issues in defendants' favor.

■ But, as stated, the trial court did not rule plaintiff's alternative motion for a new trial. A motion for a new trial, addressed to the trial court, is the basic after-trial motion to preserve trial errors for appellate review.

■ It is provided by Section 510.290 RSMo 1949, V.A.M.S., that a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

■ When a motion for a new trial is joined with a motion for judgment in accordance with a motion for a directed verdict or when the motion for a new trial is filed in the alternative, it is a trial court's duty to dispose of both the motion for judgment and the motion for a new trial in some manner because all after-trial motions should be decided together. Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 16 A.L.R.2d 904. When the trial court sustains the motion for judgment, the trial court, at the time, has the duty to consider and rule, conditionally in the alternative, on the joined or alternative motion for a new trial; and if in the alternative the motion for new trial be sustained, the trial court should specify the ground or grounds for the sustension. The requirement of the trial court's ruling of the alternative motions has been stated, and the reasons therefor

(in the interest of just, speedy and inexpensive determination of litigation) have been carefully explained. Johnson v. Kansas City Public Service Co., 358 Mo. 253, 214 S.W.2d 5; Hughes v. St. Louis Nat. League Baseball Club, supra. See also Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

In the instant case plaintiff's alternative motion for a new trial contained assignments which could not be considered in connection with plaintiff's motion for judgment. In the alternative motion for a new trial, plaintiff had assigned trial errors in the admission and exclusion of evidence, and in instructing the jury; and by other assignments in the alternative motion plaintiff was seeking to invoke the trial court's discretionary action.

■ Section 510.290, supra, contemplates that either (and both) of the parties to the action is entitled to the trial court's ruling on both alternative motions. This is the clear tenor of the Missouri decisions. Johnson v. Kansas City Public Service Co., supra; Hughes v. St. Louis Nat. League Baseball Club, supra; Stutte v. Brodtrick, Mo.Sup., 259 S.W.2d 820; Dawson v. Scherff, Mo.Sup., 281 S.W.2d 825; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782; Reaves v. Rieger, Mo.App., 241 S.W.2d 389; Vol. 1, Carr, Missouri Civil Procedure, § 812, p. 866, and 1952 Cumulative Pocket Part, p. 280. And this is the clear decision of the Supreme Court of the United States in determining the appropriate procedure under Rule 50(b) of the Federal Rules of Civil Procedure, 308 U.S.Appendix, pp. 63–64; Fed.Rules Civ. Proc. rule 50(b), 28 U.S.C.A. Montgomery Ward & Co. v. Duncan, supra. See also Pruitt v. Hardware Dealers Mutual Fire Ins. Co., 5 Cir., 112 F.2d 140; Pessagno v. Euclid Inv. Co., 72 App.D.C. 141, 112 F.2d 577; Surdyk v. Indiana Harbor Belt R. Co., 7 Cir., 148 F.2d 795; Banks v. Associated Indemnity Corp., 5 Cir., 161 F.2d 305; Vol. 2, Federal Practice and Procedure, Rules

Ed., Barron and Holtzoff, § 1081, p. 780, at pages 786–787. If both of the alternative motions are ruled by the trial court at the same time, both of the parties may urge upon appeal and the appellate court upon review may decide all of the contentions raised or assigned in all after-trial motions as the reviewing court concludes the trial court should have decided them, with the purpose that the reviewing court shall render judgment, or direct the rendition of judgment, required to properly dispose of the case. Hughes v. St. Louis Nat. League Baseball Club, supra. As we have said, this court has stated that the trial court has the duty to rule both alternative motions.

■ In this case, the trial court's failure to pass on the alternative motion for a new trial at the time of the trial court's action in sustaining plaintiff's motion for judgment deprived plaintiff on this appeal of the trial court's view and decision of those contentions of error assigned by plaintiff in the alternative motion for a new trial; and, absent plain errors affecting substantial rights, since some of the assignments in the alternative motion for a new trial pertained to matters peculiarly within the discretion of the trial court, the failure to rule the alternative motion makes it inadvisable under the circumstances of this case to render or direct the rendition of any final judgment. However, we do not approve the practice of treating piecemeal with alternative motions; and, hereafter, trial courts and counsel should see to it that both alternative motions are considered and ruled.

The trial court's order setting aside the verdict for defendants and entering judgment for plaintiff should be reversed, and the cause should be remanded with directions to the trial court to consider and rule plaintiff's motion for a new trial.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

HOLLINGSWORTH, P. J., and HYDE and WESTHUES, JJ., concur.

DALTON, J., concurs except he would remand cause for new trial.