**CHICAGO & NORTHWESTERN TRANSPORTATION COMPANY, Appellant-Respondent,**

v.

**BARCLAY–MOORE COMPANY, Respondent-Appellant.**

**No. WD 35826.**

Missouri Court of Appeals, Western District.

April 2, 1985.

Robert M. Beachy, K.C., for respondent-appellant.

Kenneth E. Bigus, K.C., for appellant-respondent.

Before LOWENSTEIN, P.J., NUGENT and BERREY, JJ.

BERREY, Judge.

Chicago & Northwestern Transportation Company, appellant-respondent (hereinafter plaintiff or CNW) appeals from a jury verdict of $1,250.00 actual damages and $1,250.00 punitive damages in an action for conversion against respondent-appellant Barclay-Moore Company (hereinafter defendant). Defendant cross-appeals claiming instructional error.

The jury awarded defendant $5,150.60 and interest of nine percent from January 30, 1982, on defendant's counterclaim on contract, and this judgment was not appealed.

The defendant is a drayage company located in Kansas City. It moves trailers to and from various locations in the Kansas City area. CNW is a railroad serving the metropolitan Kansas City area. In the process of freight movement, truck trailers are often utilized. Such trailers are placed on flatbed railroad cars and shipped about the country. CNW is responsible for all of the trailers shipped over its line.

Wardex, a division of Montgomery Ward, was a major user of CNW trailers. During 1980 and 1981 Wardex engaged the defendant to move inbound and outbound trailer loads between CNW rail yards and the Wardex truck terminal. For this service Wardex paid the defendant. In addition, the defendant would use CNW trailers to make pickups at Rival Manufacturing Company for delivery to Wardex. Occasionally defendant took empty CNW trailers to other manufacturers in the Kansas City area. Defendant also made pickups from Nelson Manufacturing Company, Mercury Marine and others for delivery to Wardex. Defendant was paid for these moves but did not pay CNW for the use of the trailer.

The defendant ramped and de-ramped all CNW trailers in Kansas City and CNW paid defendant for this service.[1] The defendant also supplied the manpower for loading and unloading the trailer contents and was paid for this service. In 1980 the defendant pulled approximately 500 trailers that were actually hauled on the CNW and the plaintiff is making a claim for payment of forty-nine of them.

The defendant performed other services for CNW. It billed CNW for the services and was not paid. Those services included loading cabooses on flatbeds for shipment to Chicago; repairing bridge plates on flatcars; and ramping and de-ramping trailers. The jury returned its verdict on this claim and it was not appealed.

■ Plaintiff alleges three points of trial court error. The first two points concern the court's error in refusing to admit exhibits 17 and 18. Under Point I, the plaintiff claims the exhibits were relevant business records and admissible under § 490.080, RSMo. Alternatively, under Point II, plaintiff claims the exhibits constituted summaries of other voluminous records already in evidence and, therefore, should have been admitted into evidence. Point III concerns the trial court's error in refusing to allow testimony on the amount of 1981 damages

which was calculated from voluminous books and records where they were not personally prepared, but supervised by the witness.

The evidence, among other things, consisted of voluminous documents from which certain re-caps were made. The trial court ruled that the CNW could not introduce evidence regarding the 1981 trailer movements because the summaries and damage computation for 1981 failed to qualify as a business record. John Canty, manager of Intermodal Operations for CNW testified that he prepared a summary for the 1980 trailer movements, plaintiff's exhibit 13. Exhibit 13 is a compilation of CNW's daily lot check records showing the status of trailers on a daily basis. He used the intermodal[2] terminal control record, exhibit 7, and the summary statements and information from the "lot checks," exhibits 3, 4, 5, and 6. Canty also used Wardex's summary, exhibit 12, Wardex's receiving registers, exhibits 8, 9, 10, and 11, the summary lot check record exhibit and the tariff, exhibit 15, as aids in arriving at his final computations. Canty reviewed "supplemental records received from Wardex." Canty testified from exhibit 13, the 1980 trailer movements. His assistant, "the auditor, intermodal services," under his direction, and using exhibit 13 as an example, prepared exhibit 17, the 1981 recap of trailer movements. Canty acknowledged that his duties included audits and preparation of summary sheets. The court admitted exhibit 13, the 1980 recap, but denied plaintiff's valiant effort to admit exhibit 17, the 1981 recap.

Robert Merrigan, Chief Clerk for CNW testified he had been employed by CNW for thirty-five years. For the past twenty years his duties included, "supervision of office personnel, handle trailers, handle diversions, mechanical detentions, grain operations ... ." Merrigan handled all documents relating to inbound and outbound trailers. In order to account for the trailers a "lot check" is used. He or another

1. The defendant put the trailers on the flatbed rail cars and removed them therefrom.

2. Intermodal means the use of trailers in flatcars in lieu of normal boxcar service.

employee would check the lot every morning and record the number of loaded and empty trailers in the lot in an intermodal registration book. Merrigan identified the date and lot check records as plaintiff's exhibits 3, 4, 5, and 6. Exhibit 3 contained daily lot checks from June 1, 1979, through February 7, 1980. Exhibit 4 contained the lot checks from February 8, 1980; exhibit 5 from November 1, 1980, through August, 1981; exhibit 6, September 1981, through December 11, 1981. Plaintiff's exhibit 7 is the intermodal terminal control record, a large and heavy book containing records of inbound and outbound trailers covering both 1980 and 1981.

William R. Hovey, Area Transportation Manager for Montgomery Ward identified exhibit 8 through 11 as inbound pro registers showing arrival of merchandise to be worked.

Miss Varnal, employed by Montgomery Ward, explained her role in this documentary quagmire as being the preparer of exhibit 12, the recap of exhibits 8, 9, 10, and 11. She testified that exhibits 8, 9, 10, and 11 "show the date, the truck line, the trailer, the source name, prices and weight and our pro [number] and each one has got a different pro number applied a different pro number to each shipment."[3] Exhibit 12, the recap, deals only with trailers handled by the defendant and it shows the trailer used to bring in the merchandise, the number, the date, the source or the people that shipped them, the merchandise, the piece count, the weight and the freight bill charge.

Next, CNW attempted to place in evidence exhibits 14 and 18 as being a summary of exhibits 3, 4, 5, 6 and 7, Wardex's summary statements and Wardex's pro registers. These exhibits were offered to prove CNW's damages. Exhibit 14 was the document upon which CNW relied to base its 1980 claim against defendant. It was prepared by Canty and was received in evidence.

The court refused to admit plaintiff's exhibit 18 into evidence. This exhibit would

bear on the amount of damages claimed by CNW in 1981. The court held there was no foundation for Mr. Canty to testify regarding the 1981 charges.

The court denied CNW's request for time to produce, from Chicago, the assistant Larry Krivak who prepared exhibits 17 and 18.

The underlying evidence from which exhibits 17 and 18 were prepared was in evidence. CNW employee, Canty, was familiar with the preparation of exhibits 17 and 18; they were prepared under his direction, with his assistance, by his assistant. The trial court erred in not receiving exhibits 17 and 18 since all of the voluminous documents which went to the makeup of the exhibits were in court and in evidence.

The court notes in *State v. Davis*, 302 S.W.2d 892, 896–97 (Mo.1957):

> In the case at bar it may be assumed that the auditor (*and his staff*) was expert ... [emphasis added].
>
> . . . .
>
> Assuming the voluminous records, books and other papers which the auditor had examined in making up the report were available to defendants for their examination and for their use in cross-examination of plaintiff's witnesses during the trial, it would seem the report was admissible and was evidence for the jury's consideration and appraisal as to its verity and value in tending to show the facts and figures, pertinent to the issues, which it purportedly reported.

*Thompson v. Arthur L. Hardin Associates*, 219 S.W.2d 860, 864 (Mo.App.1949), holds the use of summaries by the preparer is the only practical way for the jury to be properly advised of the contents of the voluminous records. Defendant contends that since Canty did not personally prepare exhibits 17 and 18, the exhibits are not admissible. However, *State v. Davis* refers to records prepared by the auditor *and* his staff. Here the underlying records

---

**3.** Each shipment received its own pro number as an aid in tracing the shipment.

were in evidence, and, Canty and his staff prepared exhibits 13 and 14 and 17 and 18. *State v. Davis, supra,* at 897.

An annual record was prepared in *Chenoweth-Chapman Corp. v. American Ins. Co.,* 553 S.W.2d 872, 873 (Mo.App.1977), and its summary was received, when offered by the company's president despite the fact that the preparer was deceased and no witness testified they observed decedent making the recap.

■ When the competency of the underlying records has been established and they are made available to the opposite party for cross-examination, the summary prepared by an expert of voluminous records is admissible. *State v. Cone,* 338 S.W.2d 22, 26 (Mo.1960). As this court affirms plaintiff's Point II, a discussion of Point I is unnecessary.

■ Plaintiff further alleges the trial court erred in not permitting Mr. Canty to testify as to 1981 damages. The keystone of this argument is whether Canty may testify as to exhibits 17 and 18 which were prepared by another, albeit, under his direct supervision and control. In the instant case exhibits 17 and 18 were prepared by Larry Krivak, Canty's assistant and were perused by Canty who testified he was thoroughly familiar with their contents. Canty had instructed Krivak on how to prepare them, which documents to use, and had interjected himself, from time to time, in the preparation of the exhibits.

"Where records or accounts are lengthy and complicated and the original records are in the courtroom, an accountant or auditor may testify as to summaries of the pertinent items which he has prepared." *Bolling Company v. Barrington Company,* 398 S.W.2d 28, 31 (Mo.App.1965).

The rule with regards to use of recaps from voluminous records is found in 4 WIGMORE, EVIDENCE § 1230 (Chadbourn rev. 1972) and is quoted in full below:

> Where a fact could be ascertained only by the inspection of a large number of documents made up of very *numerous*

*detailed* statements [emphasis in original]—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. *The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper.*

Most courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available:

(Emphasis added.) Canty should have been permitted to testify as to damages from exhibit 18. The trial court erred in its refusal.

This court has reviewed the points raised by defendant in its cross-appeal and since the case is reversed on other grounds, find it unnecessary to address their arguments.

This judgment is reversed and the cause is remanded for a new trial.

All concur.